IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TIMOTHY FRANCIS BOND,

    Plaintiff,

v.                                                                               Civil Action 3:09cv147

K. STORY,

    Defendant.

## MEMORANDUM OPINION

Plaintiff Timothy Francis Bond, a former Virginia inmate proceeding *pro se*, filed a Complaint pursuant to 42 U.S.C. § 1983. (Docket No. 1.) Bond asserts that he is entitled to relief because Defendant Story violated his rights under the Eighth Amendment[1] by failing to protect him from an attack by another inmate, Brian Norman, while Bond was incarcerated in the Southampton Regional Jail ("Jail"). Defendant Story has filed a motion for summary judgment. (Docket No. 30.) By Memorandum Order entered on July 22, 2011, the Court provided Bond with the appropriate *Roseboro*[2] notice. (Docket No. 36.) Bond has responded. (Docket No. 37.) The matter is ripe for disposition.

### I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court

---

[1] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (*quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n. 7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The Court need consider only the cited materials . . . ."). Therefore, the Court's disposition of the Motion for Summary Judgment is based upon the materials Defendant Story submitted in support of the Motion for Summary Judgment and the materials Bond submitted in opposition to the Motion for Summary Judgment.

In support of his motion for summary judgment, Defendant Story has submitted his own affidavit, an affidavit from Deputy Mark Patterson, and records from the Jail, including an incident report, and correspondence Bond submitted regarding inmate Norman. In response,

Bond has tendered his own sworn declaration. The statement in the affidavit or sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). " *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (*citing Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)). The parties have submitted a number of statements that run afoul of these principles.

For example, Defendant Story swears, "Inmate Bond was given a chance to move to another cell block prior to the alleged incident with Brian Norman by Deputy Patterson and other jail staff members. Inmate Bond refused the opportunity to move and chose to remain in his cell block." (Def.'s Mem. Supp. Mot. Summ. J. Ex. A ("Story Aff.") ¶ 5.) Defendant Story's affidavit does not reflect that he has personal knowledge of the facts set forth in this statement.[3] *See* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Deputy Patterson offers a similar statement that is not admissible for these same reasons.[4] Given that the above statements are inadmissible, they will not be considered for purposes of the Motion for Summary Judgment.

---

[3] The record suggests that any knowledge Defendant Story possesses with respect to the alleged offer to move Bond is based upon inadmissible hearsay.

[4] Deputy Patterson swears, "Inmate Bond was given a chance to move to another cell block prior to the alleged incident with Brian Norman by numerous jail staff members. Inmate Bond refused the opportunity to move and chose to remain in his cell block." (Def.'s Mem. Supp. Mot. Summ. J. Ex. B ("Patterson Aff.") ¶ 4.) Furthermore, contrary to Defendant Story's representation, Deputy Patterson does not indicate that he personally offered Bond an opportunity to move.

Additionally, a number of Bond's statements do not appear to be based upon personal knowledge. Bond swears,

> On 10-1-08 I was attacked by Brian Norman. For a week or two prior to my being attacked myself and three other inmates all wrote to the Jail Supervisor "Dep. Story" explaining that [Brian Norman] was making racially motivated comments and threats and that he was stealing and causing problems within the block. I am almost certain that we asked that he be moved to avoid any altercations. Why else would I even write to anyone with the accusations? Plus he had just been moved out of 2 block[s] for the same reasons.

(Pl.'s Resp. Mot. Summ. J. 1.)[5] Bond's description of correspondence written by himself and other inmates is inadmissible under the best evidence rule. *See Niblock v. Mercedes Benz Credit Corp.*, No. 97-1229, 1998 WL 27153, at *4 (4th Cir. Jan. 27, 1998) (concluding plaintiff's description of the service records for his vehicle were inadmissible under the best evidence rule); *Midland Eng'g Co. v. John A. Hall Constr. Co.*, 398 F. Supp. 981, 989 (D. Ind. 1975) (explaining that the best evidence rule generally requires "if written evidence of a fact exists and the written document is not offered, parol evidence of the fact cannot be admitted into evidence unless the failure to produce the written document is properly explained or accounted for" (*citing Probst v. Presbyterian Church*, 129 U.S. 182 (1889); *Supreme Tribe of Ben Hur v. Bastian*, 151 N.E. 346 (Ind. App. 1926))). Further, Bond's submissions do not indicate that he has any personal knowledge as to why Brian Norman was moved to Bond's cell block. Accordingly, the above described aspects of Bond's declaration will not be considered for purposes of the Motion for Summary Judgment.[6] In light of the foregoing submissions and principles, the following facts are established for purposes of the motion for summary judgment.

---

[5] The Court has corrected the capitalization in the parties' submissions.

[6] Of course, the "In-House Inmate Correspondence Form" from Bond to Defendant Story (Story Aff. Ex. 1) is admissible evidence of the correspondence sent from Bond to Defendant Story.

## II. Summary of Pertinent Facts

From May 2008 until July 11, 2009, Defendant Story served as the supervisor of the Jail. In September of 2008, Bond was incarcerated in the Jail on the same cell block as inmate Brian Norman. On September 22, 2008, Bond submitted an "In-House Inmate Correspondence Form" to Defendant Story. (Story Aff. Ex. 1.) In that correspondence, Bond stated, "Inmate Norman has been causing problems within the block with several inmates on numerous occassions [sic]. If he isn[']t moved he will be hurt! This is not a threat. This is a warning to protect me from any legal action taken." (*Id.*) On September 29, 2008, Defendant Story responded that he "will check into this." (*Id.*)

"The Jail has an unwritten policy that the inmates who complain about other inmates are the ones that are moved to another block." (Story Aff. ¶ 7.)[7] Bond, however, swears that he was not given a chance to move to another cell block.

On October 1, 2008, Bond "was attacked by Brian Norman." (Pl.'s Resp. Mot. Summ. J. 1.) Bond swears he "was savagely beaten and sustained severe injuries, several large lacerations, an orbital fracture and a ruptured sphincter muscle all in [his] right eye which causes [his] eye to stay dilated which causes headaches." (*Id.* at 2.)

Defendant Story swears, "There were no other informal requests filed by other inmates referencing Brian Norman's aggressive behavior. Inmate Bond's informal request was the only

---

[7] As previously noted, however, Defendant Story has not submitted admissible evidence regarding any offer to Bond to move in response to Bond's complaint about Brian Norman.

5

one. Moreover, no other inmates in the cell block complained to me about inmate Brian Norman's behavior prior to the incident." (Story Aff. ¶ 6; *see* Patterson Aff. ¶ 5.)[8]

### III. Analysis

#### A.   Eighth Amendment Standard

It is clear that the Eighth Amendment imposes a duty on prison officials "'to protect prisoners from violence at the hands of other prisoners.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (*quoting Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). Nevertheless, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *See id.* at 834. The Supreme Court emphasized that it is *conscious* disregard for intolerable risks that provides the touchstone of the deliberate indifference standard for Eighth Amendment claims:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Thus, *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168

---

[8] Bond's submissions indicate the only letter he wrote to Defendant Story concerning inmate Norman was the September 22, 2008 in-house inmate correspondence form. Specifically, in a grievance form received by Jail officials on February 28, 2009, Bond complains, "I wrote to you on an in house inmate correspondence form . . . , informing you of everything leading up to my being attacked by Brian Norman." (Pl.'s Resp. Mot. Summ. J. Attach. 1 ("Grievance Form").)

(4th Cir. 1998) (*citing Farmer*, 511 U.S. at 837); *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)).

In *Farmer*, the Supreme Court of the United States did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." 511 U.S. at 834 n.3. However, it is understood, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Thus, "[a]ny time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates." *Westmoreland v. Brown*, 883 F. Supp. 67, 74 (E.D. Va. 1995). Accordingly, a baseline risk of assault inherent to prison life cannot support an Eighth Amendment claim. *See Grieveson v. Anderson*, 538 F.3d 763, 776-77 (7th Cir. 2008).

This case turns on whether Defendant Story knew of a substantial risk of assault. The courts have found prison officials to be actually aware of a sufficiently substantial risk of assault "where custodians know of threats to specific prisoners posed by a specific source, or place prisoners in the same cell as an inmate known to have violent propensities." *Whaley v. Erickson*, 339 F. App'x 619, 622 (7th Cir. 2009) (*citing Brown v. Budz*, 398 F.3d 904, 914-15 (7th Cir. 2005)). "On the other hand, as the vagueness of a threat increases, the likelihood of actual knowledge of impending harm decreases. So, too, does the official's ability to respond." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (internal citation and quotation marks omitted).

### B. Analysis of Story's Knowledge of the Risk of Assault

The vague information that inmate Norman was causing problems insufficiently demonstrates that Defendant Story could be deemed subjectively aware that Bond faced a

7

substantial risk of an imminent assault at Norman's hands.[9] *See Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("[B]efore Defendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [an] [i]nmate['s] . . . generally problematic nature."); *see also Whaley*, 339 F. App'x at 623 (plaintiff's complaint that fellow inmate "was a troublemaker" was not sufficient to alert prison officials that the plaintiff faced a substantial risk of assault at the hands of that inmate). As the United States Court of Appeals for the Eleventh Circuit has explained, assuming jail officials drew the inference that an inmate was substantially likely to assault a fellow inmate under these circumstances assumes too much. *Carter*, 352 F.3d at 1350 ("Defendants only possessed an awareness of Inmate Barnes's propensity for being a problematic inmate . . . . Such a generalized awareness of risk in these circumstances does not satisfy the subjective awareness requirement."); *see Dale*, 548 F.3d at 569 ("The focus is on the defendants' subjective state of mind . . . . [The plaintiff's] vague statements that inmates were 'pressuring' him and 'asking questions' were simply inadequate to alert the officers to the fact that there was a true threat at play." (*citing Grieveson*, 538 F.3d at 776)).

Bond has not produced admissible evidence that inmate Norman was particularly inclined to assault other inmates. *See, e.g., Billman v. Ind. Dep't Corr.*, 56 F.3d 785, 788 (7th Cir. 1995).

---

[9] In addition to the facts set forth previously, *see supra* Part II, Bond generally swears that "Deputy Story neglected to react to our several verbal and formal warnings." (Pl. Resp. Mot. Summ. J. 1.) Bond, however, fails to set forth, as he must, the specific content of these warnings or specific facts suggesting that he has personal knowledge of any warnings that Defendant Story received. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (observing that "[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment") (alterations in original; internal quotation marks omitted); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("The plaintiff . . . has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" (*quoting Farmer*, 511 U.S. at 837)).

Nor has Bond produced evidence that reflects Defendant Story knew of any threats by Norman directed toward Bond. *See Whaley*, 339 F. App'x at 622 (granting summary judgment for defendants where plaintiff "never told the defendants that Carson had made specific threats to harm him, and he presented no evidence that any of the defendants knew about Carson's purported propensity for violence"). Moreover, Bond's communication to Defendant Story did not reflect that Bond feared an attack by Norman. *See Berry v. Sherman*, 365 F.3d 631, 634-35 (8th Cir. 2004) (concluding that plaintiff's failure to express fear suggests that substantial risk of harm did not exist). Instead, Bond's correspondence to Defendant Story suggested that Bond might be the aggressor in any future violence. *See Miller v. Fisher*, 381 F. App'x 594, 597 (7th Cir. 2010). Under these circumstances, Bond simply has not produced sufficient evidence to allow a reasonable juror to infer that Defendant Story actually perceived that Bond faced a substantial risk of attack from Norman prior to Norman's assault upon Bond. *See id.* at 596-97. Bond's Eighth Amendment claim cannot stand.

## IV. Conclusion

Defendant Story's Motion for Summary Judgment (Docket No. 30) will be GRANTED. The action will be DISMISSED.

An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 11-17-11